**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TEQUILA SMITH and CORETTA VAN DYKE, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 23-CV-03764 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| PRECIOUS DUNN and CITY OF CHICAGO, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Precious Dunn is a police officer for Defendant City of Chicago. While off-duty, Dunn intervened in an argument on the street outside her apartment between Leevon Smith and three unknown teens or young men.[1] Dunn convinced Leevon's antagonists to leave the area. When Dunn turned to leave, Leevon lunged at her and told her to give him the gun she was carrying (her service weapon). Dunn and Leevon began to struggle, and Dunn warned Leevon she would kill him if he did not let go of her. Leevon continued to reach in the direction of the gun, however, and Dunn fired three shots before she was able to disentangle herself from Leevon. Leevon died from his injuries, and his estate administrators, Coretta Van Dyke and Tequila Smith, filed suit against Dunn and the City of Chicago. For the reasons that follow, the defendants are entitled to summary judgment on all claims against them.

---

[1] Because Plaintiff Tequila Smith shares the same last name, the Court refers to Leevon by his first name to avoid confusion.

**BACKGROUND**

Precious Dunn was off-duty at her home on January 18, 2023, when she heard yelling coming from outside her apartment building. Defs.' 56.1 Statement 1 ¶ 1, ECF No. 76;[2] *id.* at 1 ¶ 1. She stepped outside to investigate the disturbance. *Id.* at 2 ¶ 7. Dunn was wearing civilian clothing and did not have her badge. *See* Ex. 2, ECF No. 78; *see also* Resp. 2, ECF No. 85.[3] Outside, she encountered Leevon Smith, along with three other individuals who were collectively arguing, shouting at, and harassing Leevon. Defs.' 56.1 Statement 2 ¶ 4. Dunn did not know Leevon or any of the assailants. *Id.* at 2 ¶ 10. The entire interaction that followed was captured by three different private video cameras on the street where the entire incident took place. The Court has reviewed that video footage.nm;

Dunn tried to convince the group to leave by telling them that the police were on their way, which she believed to be true because she heard sirens. *Id.* at 2–3 ¶¶ 15–16. One of the harassers showed Dunn that he had a gun. *Id.* at 3 ¶ 18. Dunn showed her own weapon in response. *Id.* at 3 ¶ 19. During the confrontation, Dunn at times physically inserted herself between the harassers and Leevon. About a minute and a half after Dunn stepped outside, she succeeded in diffusing the fight and the three men departed, leaving Leevon alone with Dunn. *Id.* at 3 ¶ 23–24. Dunn stayed with Leevon to ensure the group had left, during which time Leevon asked Dunn if he could use her phone. *Id.* at 3 ¶ 25. She responded that she did not have her phone with her, to which Leevon

---

[2] As discussed below, the plaintiffs did not object to any of the statements in the defendants' statement of material facts, but the Court has tried to note where the parties disagree on the relevant facts. The Court further notes that some of the exhibits cited by defendants in their Rule 56.1 statement are not, in fact, attached to the statement as required by Local Rule 56.1(d)(4). For that reason, the Court does not consider the statements supported by citations to those missing documents.

[3] The plaintiffs did not submit a Rule 56.1 statement that conforms to the Local Rule's requirements; to that end, the Court only considers the statements of fact in their Response to the extent they are supported by the available evidence.

responded by acknowledging that Dunn had said she had a gun; Dunn agreed, stating, "I do have a gun," and showed Leevon the gun tucked into her waistband. *Id.* at 3 ¶ 26; Ex. 2 at 29:12-16. During their discussion, Leevon complained that the group had robbed him of his phone, and Dunn said something to Leevon along the lines of "I would shoot your ass in 2.5 seconds and not feel bad." Ex. 2, at 30:30. Plaintiffs contend that "your" referred to Leevon. Resp. 2. Dunn says she was referring to the harassers, not Leevon. Defs.' 56.1 Statement 7 ¶ 68.

After standing alone outside with Leevon for almost two minutes, Dunn turned to walk inside her building, *id.* at 3 ¶ 24, 4 ¶ 29, walking past Leevon. Ex. 2, at 30:43. As she passed him, Leevon lunged at Dunn and wrapped his arms around her while saying what sounds like "bitch, give me the gun." *Id.* at 30:42-44. The two began to struggle, and Dunn warned Leevon, "I'll kill you." *Id.* at 30:46-47. Leevon retorted, "you going to have to kill me then." *Id.* at 30:47-48. As they continued to fight, Dunn responded, "watch this," and fired a shot. *Id.* at 30:49-50. Leevon yelled, "Ah, shit, I'm sorry!" but kept reaching for the gun, as seen in the video frame below.



*Id.* at 30:52 (Leevon reaching toward gun in Dunn's right hand).

Dunn then fired a second shot. *Id.* at 30:52. Leevon then said, "you got me, you got me!", *id.* at 30:54-55, and the two fell to the ground. Ex. 4 5:42, ECF No. 78. They continued to grapple with each other on the ground, and Dunn exclaimed, "I told your dumb ass I'll shoot you!" Ex. 2, at 30:55-56. Leevon said, "okay, okay!", *id.* at 30:56-57, but kept engaging Dunn in the fight while

on the ground. Dunn fired a third and final shot just seventeen seconds after Leevon initially grabbed her. *Id.* at 31:00. Leevon said "damn, baby, I'm sorry, okay, okay," Ex. 5, at 13:08-10, ECF No. 78, at which point Dunn got up and said, "let go right now." *Id.* at 13:10.

After the struggle over the gun ended, Dunn began yelling for someone to call the police. Ex. 2, at 31:07. She later went inside to get her cell phone, which she used to call 911. Ex. 4, at 8:24. An ambulance arrived just over four minutes after Dunn went inside to retrieve her cell phone, and six and a half minutes after she fired the final shot. Ex. 4, at 12:36. Leevon later died of his injuries, and his estate administrators brought this action. Following discovery, the defendants moved for summary judgment, arguing that Dunn's use of force was reasonable as a matter of law. The plaintiffs oppose the motion.

## DISCUSSION

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which directs courts to grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the nonmovant bears the burden of proof at trial, as the plaintiffs do here, he must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). A genuine issue exists when "a reasonable jury could return a verdict for the non-moving party." *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 609 (7th Cir. 2023) (quoting *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022)). Thus, on reviewing a motion for summary judgment, the court views all evidence in the light most favorable to the nonmovant. *Weaver*, 28 F.4th at 820.

Video evidence in support of a motion for summary judgment adds a "wrinkle" to the summary judgment analysis. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The standard applied is the same: summary judgment must be denied if there is a genuine dispute of material fact, and the

4

court must view the evidence in the light most favorable to the nonmoving party. But a court should not defer to a party's characterization of a video if no reasonable jury could view the video in that light. *Id.* at 380; *see also Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) ("[W]e will not indulge stories clearly contradicted by the footage.").

The plaintiffs' complaint outlines two theories of relief: excessive force under the Fourth Amendment and wrongful death under Illinois law. Dunn and the City argue that they are entitled to summary judgment on both theories because neither presents a genuine issue for trial, in large part because of the video footage depicting the entire altercation between Dunn and Leevon. The Court discusses the plaintiffs' two theories of relief in turn, followed by review of the parties' asserted material facts.

## A. Fourth Amendment Excessive Force

The plaintiffs sued Dunn and the City under Section 1983, which creates a cause of action against those who act under color of state law to violate a person's constitutional rights. 42 U.S.C. § 1983. The Fourth Amendment protects individuals from the excessive use of force by police officers, as defined by a "reasonableness" standard. *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016). This objective analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Stainback v. Dixon*, 569 F.3d 767, 771–72 (7th Cir. 2000) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Whether the force used was excessive depends on the totality of the circumstances. *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). Courts must pay "careful attention to the facts and circumstances of each particular case, including . . . whether the suspect poses an immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396. "The particular

use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Est. of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997) (quoting *Graham*, 490 U.S. at 397).

### a. Constitutional Violation

The defendants first argue that they are entitled to summary judgment because Dunn's use of deadly force was reasonable under the circumstances, meaning Dunn did not violate Leevon's Fourth Amendment rights. Deadly force "is reasonable where an officer has reasonable cause to believe that the suspect poses a danger of serious bodily harm." *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007). Police need not "wait until a resisting [individual] has a firm grip on a deadly weapon and completely freed himself from officers trying to subdue him before taking action to ensure their safety." *Id.*

The video footage clearly shows Leevon launching an unprovoked attack on Dunn in an effort to obtain her gun. He started a physical fight with Dunn and continued to struggle with her even after she warned him that she would shoot him and after she discharged the gun twice.[4] It is not discernible from the video whether Leevon was still trying to grab the weapon from Dunn as they struggled on the ground, but no matter; an officer in Dunn's position would have reasonable cause to believe he was reaching for her gun.[5] And clearly she did. The videos clearly show that

---

[4] The plaintiffs assert that Dunn gave no warnings whatsoever. That is simply incorrect. The video recordings record Dunn telling Leevon, as he was trying to grab her gun, that she would kill him. Leevon acknowledged the warning, responding that Dunn would have to kill him to stop him.

[5] In their statement of facts, the defendants refer to the results of a DNA report on three swabs recovered from Dunn's handgun, which purportedly show that it is 30 quadrillion times more likely that one of the profiles originated from Leevon than from three unknown unrelated individuals. Defs.' 56.1 Statement 7 ¶ 65. The defendants, however, did not provide the DNA report or the deposition testimony of the forensic scientist who conducted the analysis. Accordingly, the Court gives no weight to the DNA report in assessing whether Leevon had direct contact with Dunn's firearm during the struggle.

6

Leevon not only told Dunn to give him the gun, but he also grabbed Dunn and kept reaching in the gun's direction despite Dunn's warning that she would kill him. The entire struggle took place within less than twenty seconds. Dunn did not have the benefit of hindsight or the leisure of time to consider the best action to take, nor did she have any warning that Leevon was going to attack her. *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018) ("We must consider the totality of the circumstances, including the pressures of time and duress, and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances."). Moreover, Dunn did not need to wait for Leevon to gain full control of the gun before taking action to protect herself. *Henning*, 477 F.3d at 496. Under the circumstances, using deadly force was reasonable.

This Court's conclusion is well supported by the Seventh Circuit's decision in *Horton v. Pobjecky*. In *Horton*, an off-duty police officer was in a pizzeria when four young men began to rob the restaurant. *Id.* at 944–45. One of the men had a gun, and threatened at least one person with it while demanding money. *Id.* at 945. Although the manager was himself armed, he grabbed the gun from the man and fought for control of it. *Id.* at 945. The officer then grabbed the manager's gun. *Id.* at 946. Viewing the evidence in the light most favorable to the plaintiff, the officer subsequently shot one of the robbers in the back three times as he crawled away from the officer toward the door. *Id.* at 947. The Seventh Circuit determined that the officer's use of force was reasonable. Though the officer did not identify himself as police or issue a warning before shooting, the Seventh Circuit said that no reasonable juror could have expected him to do so "[g]iven the desperate circumstances [the officer] faced, and the limited time he had." *Id.* at 952.

The situation Dunn faced was similarly fast-moving and likewise involved a struggle over a loaded gun. Dunn was in even more imminent danger than the officer in *Horton*: she was face-to-face with Leevon, who was actively struggling with her for control of the weapon. What is

7

more, Dunn **did** warn Leevon that she was going to shoot before she did so. In the few seconds she had to process the situation after Leevon attacked her, no reasonable juror could expect her to identify herself as police. Indeed, Dunn's struggle with Leevon lasted only about 19 seconds, about half the time of the pizzeria shooting at issue in *Horton*. *Id.* at 947. Just like the officer in *Horton*, Dunn's use of force was reasonable under the fast-paced, chaotic circumstances.

The plaintiffs contend that there are material fact disputes that preclude summary judgment because it is undisputed that Leevon never controlled the weapon and was himself unarmed. Resp. 2. Those facts are undisputed but irrelevant in the context of this case. Leevon never controlled the weapon because Dunn prevented him from wresting it away from her; that he was unarmed before his attack supplies only a motive for Leevon's efforts to obtain Dunn's firearm, not a license to attack her. There is, in short, no doubt whatsoever that Leevon attacked Dunn without provocation, tried to grab her firearm, and did not halt his attack until Dunn, after warning Leevon, had shot him three times. Under these circumstances, it is the plaintiffs' argument that is unreasonable, not Dunn's use of force to defend herself and deny Leevon's efforts to obtain her gun.

### b. Qualified Immunity

Even if one could somehow argue that Dunn's use of force was not reasonable under the circumstances, she is immune from liability. Officers cannot be sued under § 1983 for violations of federal rights not clearly established at the time of the alleged violation. *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021). "To find that a right is clearly established, courts generally 'need to identify a case where an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (quoting *Escondido v. Emmons*, 586

8

U.S. 38, 43 (2019) (per curiam)).[6] General principles are insufficient to create clearly established law. *Id.* The plaintiff bears the burden of demonstrating that "existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

In support of their argument that Dunn is not entitled to qualified immunity, the plaintiffs first cite cases stating general principles:

> [T]he Seventh Circuit has noted, "whenever possible under the circumstances, the officer should try to identify himself as a law enforcement officer to the suspect." *Muhammad v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002). Justice White stated in *Tennessee v. Garner* 471 U.S. (1985) "it is not better that all felony suspects die than that they escape".

Resp. 6 (citations unaltered). But *Zorn* makes clear that these general principles, divorced from specific factual context, are not enough. So the plaintiffs also point the Court's attention to *Estate of Starks v. Enyart*, 5 F.3d 230 (7th Cir. 1993), and *Porter v. City of Muncie*, No. 98-1491-C, 1999 WL 33117261 (S.D. Ind. Nov. 22, 1999). The latter is easily disposed of; a single district court case cannot clearly establish the law. *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017). And in any case, the *Porter* court based its decision to deny summary judgment on the fact that the parties disputed what actually occurred, not on a legal determination about what constituted reasonable force. *Porter*, 1999 WL 33117261, at *4.

*Estate of Starks* fares no better. There, defendant officers shot and killed a suspect who had been driving away when one of the officers may have jumped in front of the moving car. *Estate of*

---

[6] The defendants filed a "Motion Requesting the Court Accept Supplemental Authority," citing the Supreme Court's recent decision in *Zorn*. ECF No. 95. Pursuant to this Court's procedures (located on its website), no such motion is required. A party should simply file a Notice of Supplemental Authority. As relevant Supreme Court precedent, the Court of course considers *Zorn* in its analysis, so the motion is granted.

*Starks*, 5 F.3d at 232. The Seventh Circuit declined to grant summary judgment based on qualified immunity. *Id.* at 235. The court reasoned that if he did jump in front of the car, the officer "would have unreasonably created the encounter that ostensibly permitted the use of deadly force to protect him," *id.* at 234, "leaving [the decedent] no time to brake." *Id.* No compelling analogy can be drawn to the case at hand; Leevon started the fight with Dunn and could have stopped it at any time by letting her go. The plaintiffs therefore point to no case which clearly establishes that Dunn's actions were unconstitutional, nor is this Court aware of any. Dunn is entitled to qualified immunity.

### c. City of Chicago's Liability

Cities like Chicago can be held liable for constitutional violations under the Supreme Court's decision in *Monell v. Department of Social Services*. 436 U.S. 658 (1978). But the first element of a *Monell* suit requires the plaintiffs to show that Leevon's constitutional rights were violated. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Because the plaintiffs have not done so, as discussed above, they cannot hold the City liable for any of Dunn's actions.

## B. Wrongful Death

Plaintiffs also advance a wrongful death claim. 740 Ill. Comp. Stat. 180/1 (West 2026). Illinois immunizes officers who are executing or enforcing the law from tort liability unless their conduct is "willful and wanton." 745 Ill. Comp. Stat. 10/2-202 (West 2026). Under Illinois law, as under the Constitution, "when an officer believes that a suspect's actions [place] him . . . in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force." *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002) (quoting *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988)); *see also* 720 Ill. Comp. Stat. 5/7-5 (West 2026). ("[An

10

officer] is justified in using force likely to cause death or great bodily harm . . . [when] he reasonably believes, based on the totality of the circumstances, that such force is necessary to prevent death or great bodily harm to himself or such other person.”). As such, while a wrongful death claim is not “coterminous” with a Fourth Amendment claim, “a finding of reasonableness under the Fourth Amendment standard usually results in a finding that willful and wanton conduct did not occur.” *Gilbert v. City of Chicago*, 404 F. Supp. 3d 1215, 1222 (N.D. Ill. 2019).

Defendants argue they are also entitled to summary judgment on the plaintiff's wrongful death claim because, as with the Fourth Amendment claim, Dunn's use of force was reasonable under the circumstances. Mot. Summ. J. Mem. 15. Plaintiffs made no separate arguments in support of their wrongful death claim, so the Court has no reason to doubt its conclusion that Dunn reasonably believed she was in imminent danger of death or severe injury, making Dunn's use of force reasonable as a matter of law. Defendants are therefore also entitled to summary judgment on the wrongful death claim.

## C. Compliance with Local Rule 56.1

This Court could alternatively grant summary judgment to Dunn and the City on the basis of their Rule 56.1 statement. The Northern District of Illinois's Local Rules (“LR”) require a summary judgment movant to file a statement of material facts, directing the court to the relevant facts found throughout the discovery process. LR 56.1(a)(2). In response, the nonmovant must admit or dispute each of the facts the movant has put forth. LR 56.1(e)(2). If the nonmovant wants to designate facts showing a genuine issue that the movant has not yet designated, he should file a statement of additional material facts. LR 56.1(b)(3). Undisputed facts may be deemed admitted. LR 56.1(e)(3); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2005); *see also FTC v. Bay Area Bus. Council*, 423 F.3d 627, 633 (7th Cir. 2005) (“Because of the important function

local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). These statements of facts help the Court efficiently evaluate the parties' respective arguments, especially given "the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law." *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011).

The Court's analysis above establishes that Dunn and the City are entitled to summary judgment based on the entire record. But if, as the Court is entitled to do, one only looks at the parties' Rule 56.1 statements, it is even clearer that the defendants' motion for summary judgment should be granted. Because Tequila and Van Dyke filed no Rule 56.1 statement of their own, the only facts the Court is required to look at are those contained in the defendants' statement. As the plaintiffs did not object to any of the facts in the defendants' statement, the allegations properly supported with evidence are deemed admitted, including the allegations that Leevon was attempting to grab Dunn's firearm when each shot was fired. Defs.' 56.1 Statement 4 ¶ 38, 5 ¶¶ 42, 48. Looking solely at those statements, there is no triable issue on either the Fourth Amendment or wrongful death theories.

\*     \*     \*

The events of January 18, 2023 were undoubtedly tragic. But Officer Dunn's use of deadly force was clearly a justifiable response to Leevon's unprovoked attack. Even if there were some question about the lawfulness of Dunn's use of force, moreover, the plaintiffs have identified no controlling authority that would have told Dunn that she could not shoot an assailant who was attempting to gain control of her weapon. For that reason, neither Dunn nor the city may be held liable for the shooting. Summary judgment is granted for defendants.

Date: June 3, 2026

John J. Tharp, Jr.
United States District Judge

13